**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE:

**MAGALY CALDERO LOPEZ**

    **Debtor(s)**

**CASE NO. 15-04334**

**CHAPTER 13**

**FILED & ENTERED ON 06/06/2019**

**OPINION & ORDER**

Before the court is creditor BT Recovery Corp.'s (hereinafter "BT") *Objection to Confirmation and Request for Dismissal* [Dkt. No. 110]; Debtor Magaly Caldero Lopez's (hereinafter "Debtor") *Opposition to BT (Recovery) Corp.'s Objection to Confirmation and Request for Dismissal* [Dkt. No. 179]; BT's *Reply to Debtor's Opposition to Creditor's Objection to Confirmation and Request for Dismissal* [Dkt. No. 195]; Debtor's *Supplemental Memorandum Res Judicata under Puerto Rico Law* [Dkt. No. 218]; BT's *Response to Debtor's "Supplemental Memorandum Res Judicata Under Puerto Rico Law"* [Dkt. No. 226]; Debtor's *Reply to Response to Debtor's Supplemental Memorandum Filed by BT (Recovery) Corp.* [Dkt. No. 233]; and BT's *Sur Reply to "Reply to Response to Debtor's Supplemental Memorandum Res Judicata Under Puerto Rico Law" (Docket 233)* [Dkt. No. 237]. The motions filed which brief the principle of res judicata (docket numbers 218, 226, 233 and 237) were in response to an Order given in open court at a hearing held on February 8, 2018 [Dkt. No. 216].[1]

---

[1] In relevant part, the court scheduled a Preliminary Pretrial Conference to consider BT's *Objection to Confirmation and Request for Dismissal* [Dkt. No. 110]; Debtor's *Opposition to BT (Recovery) Corp.'s Objection to Confirmation and Request for Dismissal* [Dkt. No. 179]; and BT's *Reply to Debtor's Opposition to Creditor's Objection to Confirmation and Request for Dismissal* [Dkt. No. 195]. At said hearing, the attorney for Debtor requested additional time from the court to file a legal brief on the Rooker Feldman doctrine, res judicata and their applicability in Puerto Rico jurisprudence.

At the core of this controversy is BT's contention, set forth in their objection to confirmation and request for dismissal and several additional motions, that Debtor filed both the voluntary petition and the plan in bad faith.

**FINDINGS OF FACT**

After a careful review of all the documents provided by parties, the court finds the following to be the material facts relevant to the controversy before the court:

1. On February 15, 2000, Derick Perez-Lara (hereinafter "DPL") doing business as El Ocho Negro Auto Sales, sold to The Bank & Trust of Puerto Rico (hereinafter "Bank & Trust"), a 1999 BMW make motor vehicle, model 328i Sedan (hereinafter "BMW").

2. At the time of DPL's purchase of the BMW there was no theft encumbrance at the Department of Transportation and Public Works (hereinafter "DTOP").

3. At some point after Bank & Trust's financing of the BMW, a theft encumbrance was registered at DTOP.

4. On February 18, 2000, the Debtor signed a lease rental contract (hereinafter "Lease") for the BMW.

5. Debtor breached the terms of the Lease on or about February 2000.

6. On April 18, 2000, the BMW was stolen.

7. On October 25, 2000, Bank & Trust filed a complaint in state court against the Debtor and other parties. Bank & Trust v. Magaly Caldero, DCD-2000-2540.

8. On May 3, 2004, Bank & Trust executed a 'Bill of Sale and Assignment' whereby it transferred to BT-SPV, Inc. all of Bank & Trust's defaulted automobile leasing accounts, which included the loan owed by the Debtor.

9. On May 22, 2006, the Superior Court of Bayamon entered Judgment in the case of Bank & Trust v. Magaly Caldero, DCD-2000-2540 against the Debtor for the amount $41,501.49, plus interests at the annual rate of 10.45% and $12,637.00 for attorney's fees.

10. On December 15, 2006, BT-SPV, Inc. executed a 'Sale, Assignment and Conveyance' whereby it transferred to BT the accounts that BT-SPV, Inc. had acquired from Bank & Trust, which included the loan owed by the Debtor.

11. On April 25, 2008, the Puerto Rico Court of Appeals eventually affirmed the Judgment entered by the Superior Court of Bayamon the on May 22, 2006.

12. BT holds a judicial lien over the property which was presented at the Property Registry for Section I of the Bayamon Property Registry, at page (''folio'') number 72 of Judgments Volume number 4 (''Tomo 3 de Sentencias''), with the date of January 31, 2012, in the amount of $41,501.49.

13. That said judicial lien constitutes a lien upon the property.

14. On June 6, 2015, Debtor filed her bankruptcy petition [Dkt. No. 1].

**BT'S ARGUMENTS IN SUPPORT OF ITS OBJECTION TO CONFIRMATION AND DISMISSAL OF THE CASE**

    *A. Objection to Confirmation of the Amended Plan*

BT starts with the premise that Debtor's voluntary bankruptcy filing "place[s] the rectitude of [her] prior dealings squarely at issue." Brown v. Felsen, 442 U.S. 127, at 128 (1979). To support its claim, BT's objection contains a "Statement of Uncontested Material Facts"[2] which lists forty (40) alleged facts that form the basis of BT's main argument. These alleged facts, BT maintains, are supported with evidentiary record citations. BT claims that the Debtor has failed to present any evidence to prove her good faith despite BT's recital of uncontested material facts. These facts stand unopposed and are therefore the accepted facts concerning Debtor's actions in 1999 and 2000. There is more than sufficient evidence that shows clearly and convincingly that the Debtor knowingly participated in an illegal scheme that involved a stolen vehicle.

Finally, BT states that § 1325(a)(7) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8. In discussing § 1325(a)(7) in Branigan v. Bateman, 5 F.3d 272, 283 (4th Cir. 2008), the court indicated that the

---

[2] BT's statement of the facts is found in its *Objection to Confirmation and Request for Dismissal* [Dkt. No. 110], pages 1-7.

"proper good faith inquiry is `whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan.'" (citing Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982) (analyzing whether a plan was filed in good faith under § 1325(a)(3) of the Bankruptcy Code).

### B. Dismissal of the Case

BT cites the following sections of the Bankruptcy Code, 11 U.S.C. §§ 105(a), 1307(c) and case law, as authority for the court to dismiss this chapter 13 case. The federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a chapter 13 case. Marrama v. Citizens Bank, 549 U.S. 365, 367 (2007). First, 11 U.S.C. § 105(a) grants the bankruptcy court the inherent equitable authority to dismiss a bankruptcy petition for lack of good faith. Id. Second, § 1307(c) allows for the dismissal of a chapter 13 bankruptcy for "cause," which includes the lack of good faith. Kestell v. Kestell, 99 F.3d 146, 148 (4th Cir. 1996). Third, § 1325(a)(7) explicitly requires that a chapter 13 plan be filed in good faith as a prerequisite to confirmation.

### C. Allegations in Support

BT states that the debt undertaken by the Debtor to obtain a luxury vehicle in the year 2000, which she intends this court to discharge, was as a result of a "web of lies"[3]. Debtor lied about the source of her income, her profession, and her income. Debtor does not have clean hands and these actions constitute of bad faith.

Moreover, Debtor's actions just prior to filing her petition, and throughout the bankruptcy process, continue to demonstrate her deceptive practices. Instead of showing good faith and pursuing a settlement agreement following the 2006 issuance in the State Court Case, Bank &

---

[3] BT's *Reply to Debtor's Opposition to Creditor's Objection to Confirmation and Request for Dismissal* [Dkt. No. 195], page 14.

Trust v. Magaly Caldero, DCD-2000-2540 of the Judgment (hereinafter "Judgment") with the creditor[4], the Debtor depleted her liquid funds from a securities account and diverted them towards the purchase of a real property. The property is essentially paid off, and the Debtor now claims exempt all the equity in that property resulting in no payment to her creditors. The Debtor was current in all of her debts when she first met with her bankruptcy attorney, aside from the claim of BT and her bankruptcy would result in the discharge of only $854.00 in unsecured claims, aside from the claim of BT.

Finally, Debtor has continued to deceive BT by cancelling a deposition scheduled for August 3, 2016, on the premise that a settlement was about to be signed. BT cancelled said deposition relying on Debtor's representation that she had accepted the agreement. However, soon after, Debtor's attorney informed BT that the Debtor was not willing to sign a stipulation. In sum, the Debtor does not meet the good faith element required by the Code. Debtor's conduct, both at the time the loan was obtained and after she was sued by the creditor in state court, reflects that she never had the intention of paying the loan. The Debtor filed for bankruptcy with the sole purpose of discharging BT's claim, and in the process continued to make false and deceptive statements in order to gain unwarranted litigation advantage in the case.

The Debtor is attempting to use bankruptcy law – and this court – in furtherance of her deceptive actions. This is not the case of an honest but unfortunate debtor. More importantly BT states, these events are directly related to Debtor's bankruptcy and she has not provided a single authority that holds that the passage of time cures bad faith actions. Debtor comes to the bankruptcy court for the exclusive purpose of avoiding a debt that was the product of fraud. The Debtor has admitted that she filed for bankruptcy to stay the State Court's Order scheduling a

---

[4] The original plaintiff in the state court action was Bank & Trust.

public auction. As such, Debtor's bankruptcy filing is directly related to, and is a consequence of the loan that the Debtor took in the year 2000.

**DEBTOR'S OPPOSITION**

It is Debtor's position that BT is requesting that this court ignore the Judgment and review alleged facts that occurred more than fifteen (15) years ago. This, argues Debtor, goes against the basic principles of res judicata, issue preclusion, claims preclusion and the Rooker Feldman doctrine. BT's motion is predicated on purported facts that are too remote in time. BT argues that Debtor's plan should not be confirmed and her case dismissed because allegedly the Debtor, more than 15 years before the filing of the bankruptcy petition, misrepresented her ability to pay for the vehicle. Debtor states "[w]e are not aware of any case law that would support a *"totality of the circumstances"* analysis considering facts that allegedly occurred more than 15 years ago."[5]

Moreover, BT's attempt to relitigate a state court case which began in the year 2000, and where judgment was entered in 2006, by bringing forth allegations of fraudulent misrepresentation and fraud are precluded by the Rooker Feldman doctrine and res judicata. Under applicable Puerto Rico Law a valid judgment is binding and conclusive upon the parties to the complaint and their privies. BT has not met its burden in objecting Debtor's plan confirmation, much less the burden to dismiss the case on bad faith filing grounds. BT has not even tried to explain why the court should consider facts beyond those established by the Judgment. Altogether, BT fails to provide any legal support for this type of inquiry into alleged facts that occurred fifteen years pre-petition. In all the motions filed by the Debtor in this

---

[5] Debtor's *Opposition to BT (Recovery) Corp.'s Objection to Confirmation and Request for Dismissal* [Dkt. No. 179], page 8.

controversy, the legal principles of res judicata and the Rooker Feldman doctrine are discussed at length, including the applicability of these doctrines in Puerto Rico jurisprudence.

**BAD FAITH**

Section 1307(c) of the Code provides for the dismissal of a case under chapter 13 "for cause…." 11 U.S.C. § 1307(c). "The list of grounds for dismissal or conversion found in § 1307 is not exhaustive; the court is not limited by the specific circumstances specifically mentioned there. There may be other factors warranting dismissal under the rubric of 'lack of good faith' often referred to as 'bad faith'". In re Gonzalez Ruiz, 341 B.R. 371, 382 (1st Cir. BAP 2006). "The powers bestowed upon the court in § 105(a) include the equitable and discretionary power to dismiss a case under § 1307(c)." Howard v. Lexington Invs., 284 F.3d 320, 323 (1st Cir. 2002). Most Important for purposes of this court's analysis, "[t]he moving party under [ ] § 1307(c) bears the burden of proof." In re O'Neal, No. 10–22931, 2011 WL 2117017, at *6 (Bankr.D.Mass. May 23, 2011) (citation omitted).

In interpreting the bankruptcy court's equitable powers pursuant to section 105, the U.S. Supreme Court has stated that "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code'". Law v. Siegel, 571 U.S. 415 (2014), quoting 11 U.S.C, § 105(a).     After Siegel, the U.S. Court of Appeals for the First Circuit adopted a similar analysis in In re Oak Knoll Associates, L.P., 835 F.3d 24 (1st Cir. 2016), but added the caveat that this authority does not give bankruptcy courts "a roving writ, much less a free hand" to provide equitable relief. Id. Rather, this statute "may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code." In re Oak Knoll Associates, L.P., 835 F.3d at 34. Pursuant to section

-7-

1325(a)(7), "[t]he determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances." In re Costa Bonita Beach Resort Inc., 479 B.R. 14, 40 (Bankr. D.P.R. 2012).

Bankruptcy courts generally consider the following factors in analyzing the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith: (1) the debtor's accuracy in stating her debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has made any misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be dischargeable in a Chapter 7; (6) the debtor's motivation and sincerity in seeking Chapter 13 relief; (7) the debtor's history of filings and dismissals; and (8) whether egregious behavior is present. See In re Gonzalez–Ruiz, 341 B.R. at 383: In re Cabral, 285 B.R. 563, 573 (1st Cir. BAP 2002).    Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365 (2007); Berliner v. Pappalardo, 674 F.3d 78, 82 (1st Cir.2012).

The First Circuit has determined that, "in all events, good faith is a concept not a construct. It is a concept that derives from equity. This matters, because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F.3d 78, 81 (1stCir. 2012).   Good faith is an abstract idea generalized from particular circumstances and not a working assumption.

**ANALYSIS**

Notwithstanding Debtor's arguments, the focus of the court's analysis of the controversy in this case is not based on the principles of res judicata or the Rooker-Feldman doctrine. The

correct legal and factual framework on which this case turns is the Debtor's good faith, or lack thereof, in the filing of her chapter 13 case and plan.[6] To begin, the court will dispel certain assertions made by the parties that are incorrect or irrelevant to the court's reasoning: (1) BT's argument that Debtor's failure to contest its statement of facts found in their reply to Debtor's opposition lacks a legal basis. Federal Rule of Civil Procedure 8 does not apply to contested matters in bankruptcy cases.[7] Therefore, the court is not bound by BT's list of forty alleged facts, and (2) Debtor's repeated statements that BT is attempting to relitigate the state court case is not supported by BT's pleadings. The court concurs with BT that its use of the finding of facts from the state court Judgment is part of the foundation upon which it bases Debtor's bad faith in her bankruptcy filing.

BT states that Debtor has not provided a single legal authority that holds that the passage of time cures bad faith actions. However, "[t]he moving party under [ ] § 1307(c) bears the burden of proof." In re O'Neal, No. 10–22931, 2011 WL 2117017, at *6 (Bankr.D.Mass. May 23, 2011) (citation omitted). In their motion objecting confirmation, BT lists a series of "facts" which are comprised of individual statements; some of which can be ascertained through documents -- such as Debtor's 1999 tax returns; others that are conjecture -- such as what Debtor did with funds allegedly withdrawn from a security account; and others are assumptive -- such as whether Debtor provided book keeping services. BT utilizes these individual statements to

---

[6] Although BT requests that the court deny the confirmation of Debtor's plan, its legal arguments pursuant to § 1325(a)(3) are lacking. BT bases both the denial of the confirmation of the plan, and the dismissal of the case on the same nucleus of factual allegations. As such, the court turns it attention to BT's request for dismissal of the case.

[7] Federal Rule of Civil Procedure 8, applicable to bankruptcy matters through Federal Rule of Bankruptcy Procedure 7008, specifically states that Fed. R. Civ. P. 8 "applies in adversary proceedings." Fed. R. Bankr. P. 7008(a). The difference between a contested matter and an adversary proceeding is relatively simple – a contested matter involves a contested request for relief in the context of the main bankruptcy proceeding (pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure), while an adversary proceeding involves the filing of a complaint, commencing a separate proceeding governed by the "7000" series of the Bankruptcy Rules.

construct a narrative which denotes Debtor's actions in 1999 and 2000 as fraudulent. This court disagrees.

The facts set forth in the Judgment and the actions of Bank & Trust at that time, contradict BT's version of events. From 1999 until early 2017, no allegation of fraud has ever surfaced as a consequence of Debtor's actions in 1999 and 2000; no criminal investigation was ever launched; nor was any criminal or civil action based on fraud ever filed. At the time of the collection action against Debtor in the year 2000, Bank & Trust could have pursued a civil action against Debtor for fraud within the confines of the collection action or in a separate complaint. Bank & Trust did not pursue that course of action. BT cannot now go back in time to impugn the facts found in the state court case, nor the legal strategy pursued by Bank & Trust with an allegation of fraud woven out of thin air. And, although cited by BT as grounds for bad faith, there is no proof that Debtor's breach of her Lease contract was fraudulent. Likewise, a party's inability or unwillingness to settle with a creditor after a collection judgment has been obtained does not constitute fraud. More to the point, BT has not produced a single legal authority which has adjudicated that a debtor's actions, so far removed in time from the actual filing of a petition for relief, constitutes bad faith.[8]

---

[8] This court researched cases in the First Circuit which determined bad faith existed, and was unable to uncover any legal authority which found that a debtor's actions - so far removed from the filing of a petition - constituted bad faith. A majority of cases where the court concluded that a debtor(s) acts amounted to bad faith, were within a year of the order for relief, and the actions themselves occurred almost exclusively post-petition. See In re Colon Martinez, 472 B.R. 137 (B.A.P. 1st Cir.2012)(where the debtor has a history of failure to complying with his obligations as a debtor, courts have found a lack of good faith); In re Stevens, 2013 WL 5229801 (Bankr.D.N.H. 2013)(there is no evidence to support a finding that the debtor had knowledge that the business had a higher value on the petition date, and then purposefully under-represented that value on his schedules.); Robin Singh Educ. Servs. v. McCarthy, 488 B.R. 814, 826 (B.A.P. 1st Cir. 2013)(court found deceptive pattern of fraud or reckless indifference to the truth due to debtor's failure to disclose multiple accounts on his schedules post-petition and give untruthful responses at the § 341 meeting of creditors and Rule 2004 examination); In re Hannigan, 409 F.3d 480 (1st Cir. 2005)(court denies motion based on debtor's alleged bad faith in undervaluing property on his original schedules.); In re Lopez Llanos, 578 B.R. 700 (Bankr.D.P.R. 2017)(debtor's failure to disclose his prepetition cause of action, his settlement thereof, or his receipt of settlement proceeds less

-10-

BT also maintains that Debtor's actions right before filing her petition, and subsequently, show her bad faith. BT asserts that Debtor's filing of her petition for relief with the legal remedies the Code provides, resulted in thwarting BT's enforcement of its lien over her residence. To buttress this argument, BT declares the following:

- a public action scheduled to take place was stopped due to Debtor's bankruptcy filing;

- Debtor avoided BT's lien over her residence through her use of 11 U.S.C. § 522(f);

- Debtor effectively eliminated BT's lien through the use of exemptions;

- Debtor's bankruptcy filing afforded her a litigation advantage; and

- Debtor's bankruptcy filing will mainly result in the discharge of BT's claim.

Following extensive research, this court has not found a single case in the First Circuit that holds that a Debtor filing one petition for relief in order to save their property from a public auction is grounds for a finding of bad faith.[9] In fact, it has been this court's experience that a significant percentage of bankruptcy cases are filed as a result of a pending public auctions and foreclosures. Likewise, Debtor's use of the Code's protections and privileges under sections 506

than one month before he filed his bankruptcy petition warranted dismissal of case as bad faith filing); In re Visconti, 448 B.R. 617 (Bankr.D.N.H., 2011)(court finds the conduct of debtor at and after the first meeting to demonstrate an intent to mislead the trustee and misrepresent the amount and existence of his assets and to conceal property from the trustee.); In re Bouchard, 560 B.R. 385 (Bankr.D.R.I., 2016)(debtor's omission of material information from bankruptcy schedules and statement of financial affairs, omissions that he only gradually corrected through multiple amendments and only when "the cat was out of the bag," coupled with his deliberate manipulation of his income and expenses, provide "cause" for dismissal or conversion on bad faith grounds); In re Zizza, 500 B.R. 288 (B.A.P. 1st Cir. 2013) (finding that chapter 13 debtor lacked good faith in filing her petition was supported by evidence that debtor failed to disclose two assets, namely, her two prepetition personal-injury lawsuits, on her original and first amended Schedule B, in her statement of financial affairs (SOFA), and at her meeting of creditors); In re Bradley, 567 B.R. 231 (Bankr.D.Me. 2017)(debtor's former husband failed to show, as basis for refusing to confirm her proposed debt adjustment plan, that chapter 13 petition was not filed in good faith merely because petition was filed when debtor was about to be incarcerated for her contempt of state divorce court's orders).

[9] The court did find a number of cases where a debtor who files multiple petitions to avoid a secured creditors right to seek a state court remedy, does so in bad faith. In re Gonzalez- Ruiz, 341 B.R. at 384; In re Sullivan, 326 B.R. 204 (1st Cir. BAP 2005); In re Fleury, 294 B.R. 1 (Bankr.E.D.Mass. 2003); In re Jordan, 2013 WL 6860772 (Bankr.D.N.H. 2013); In re Ortiz, 200 B.R. 485 (Bankr.D.P.R. 1996).

-11-

and 522[10] does not constitute bad faith. It is the right of every debtor who seeks bankruptcy relief. Debtor's change of heart as to a possible settlement agreement with BT does not mean that it was a tactic to avoid a deposition.

There is no evidence, either pre-petition or post-petition, that Debtor's motivation in seeking bankruptcy relief was to extinguish her obligation to BT. Debtor's act of filing the petition on the eve of a public auction does not reflect an improper motive for seeking bankruptcy relief. A debtor may appropriately resort to chapter 13 to resolve financial difficulties caused by the debtor's own mistakes. See In re Johnson, 428 B.R. 22, 24 (Bankr.W.D.N.Y. 2010). Furthermore, "[m]any, if not most, bankruptcy petitions are filed in response to creditor enforcement efforts." In re Green, 2010 WL 396253 at *3 n.8 (Bankr.E.D.Va. Jan. 27, 2010). Despite BT's contentions to the contrary, the court finds that Debtor's act of filing for relief under the chapter 13 was not itself an attempt to "thwart" her creditors. Debtor timely filed the required forms, schedules, and chapter 13 plan. Neither the chapter 13 trustee assigned to the case, nor any other creditor, has filed any motion alleging misinformation, lack of information, wrongdoing or lack of candor in Debtor's filings or at the § 341 Meeting of Creditors.

**CONCLUSION**

This court finds that BT has failed to satisfy the burden that Debtor's case should be dismissed for bad faith in the filing the bankruptcy petition pursuant to Section 1307(c) and/or Section 105(a). The factual allegations offered in support of the dismissal of the case are both speculative, and even assuming they are true, are so remote in time or immaterial to support a finding of bad faith. The court concludes that Debtor did not file her bankruptcy petition to manipulate the Bankruptcy Code unfairly. Accordingly, BT's *Objection to Confirmation and*

---

[10] Law v. Siegel, 571 U.S. 415, 417 (2014); Owen v. Owen, 500 U.S. 305, 306 (1991).

-12-

*Request for Dismissal* [Dkt. No. 110] is DENIED. The Clerk to schedule a hearing on confirmation for the amended plan dated 2/23/2017 [Dkt. No. 103].

SO ORDERED

In San Juan, Puerto Rico, this 6th day of June, 2019.

Brian K. Tester
U.S. Bankruptcy Judge

-13-